UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIA VITAL COMPONENTS CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> ASETEK DANMARK A/S, <br><br> Defendant. | Case No. 16-cv-07160-JST <br><br> **CLAIM CONSTRUCTION ORDER** <br> Re: ECF Nos. 86, 94. |

Before the Court is Defendant Asetek Danmark A/S's ("Asetek") Opening Claim Construction Brief, ECF No. 86, and Plaintiff/Counterclaim Defendant Asia Vital Components Co., Ltd.'s ("AVC") Responsive Claim Construction Brief, ECF No. 94. The parties propose competing constructions of nine terms from Asetek's patents, U.S. Patent Nos. 8,240,362 ("the '362 patent") and 8,245,764 ("the '764 patent").[1] The court will construe the terms as set forth below.

I. **BACKGROUND**

This case concerns two patents, held by defendant Asetek, that describe a liquid cooling device for the central processing unit of a computer. AVC brought this declaratory judgment suit against Asetek seeking a judgment that the '362 patent and the '764 patent are invalid, unenforceable, and not infringed by AVC. ECF No. 1 at 1-2. Asetek counterclaimed that the AVC products-at-issue infringe certain claims from the patents-in-suit. ECF No. 73 at 8-20.

The specifications of the '362 and '764 patents are similar, but the patents are neither

---

[1] The parties agree that "double-sided chassis" ('764 patent, claim 1) shall be construed as "a two-sided frame or housing, each side of which has a purpose." ECF No. 78 at 2. The Court will construe this term accordingly.

directly related nor identical. ECF No. 86 at 7. However, the parties agree that certain similar claim terms in both patents shall be construed to have the same meaning.

## II. OBJECTION TO EXPERT DECLARATION

Asetek objects to the Declaration of Dr. Randy Clarksean, and its exhibits, submitted in support of AVC's Responsive Claim Construction Brief. ECF No. 99 at 2. Asetek objects on two grounds: (1) "failure to designate the expert witness testimony (and accompanying exhibits) during the exchange of the parties' 'Preliminary Claim Constructions' as required by Patent L.R. 4-2," and (2) "failure to identify the expert witness testimony (and accompanying exhibits) in the Parties' Joint Claim Construction and Prehearing Statement" as required by Patent L.R. 4-3. Id. AVC did not respond to Asetek's objection.

Patent Local Rule 4-2 requires the parties to exchange their preliminary proposed constructions for disputed claim terms, as well as the evidentiary support—both intrinsic and extrinsic—for those proposed constructions. Patent L.R. 4-2(b). The rule requires parties who may rely on expert testimony to "provide a description of the substance of that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction." Patent L.R. 4-2(b).

Patent Local Rule 4-3, which sets out the requirements for the Joint Claim Construction and Prehearing Statement, likewise requires identification of "any extrinsic evidence known to the party on which it intends to rely either to support its construction or to oppose any other party's proposed construction," including "testimony of percipient and expert witnesses." Patent L.R. 4-3(b).

The parties have not provided the Court with AVC's Patent Local Rule 4-2 disclosures. Because AVC did not respond to the objection, however, the Court assumes that AVC did not identify Dr. Randy Clarksean there. AVC did not identify Dr. Randy Clarksean or propose any expert witness testimony in its Local Rule 4-3 disclosures either. Given that AVC did not even raise the possibility of expert witness testimony before its Responsive Claim Construction Brief, let alone identify its expert witness by name, AVC violated Patent Local Rules 4-2 and 4-3.

The Court acknowledges there is some ambiguity in the Patent Local Rules regarding the

2

level of detail required to adequately preserve the right to rely on expert testimony. However, under any reasonable reading of these rules, AVC's disclosures failed to put Asetek on notice of AVC's intent to rely on expert testimony. A prior order from this Court addressed the disclosure requirements of the Patent Local Rules with respect to the use of expert opinion at claim construction. Tristrata, Inc. v. Microsoft Corp., No. 11-cv-03797-JST, 2013 WL 12172909, at *2 (N.D. Cal. May 13, 2013). There, the plaintiff claimed to have a "good faith dispute [with the defendants] over the meaning of Patent Local Rule 4-3," with the plaintiff interpreting the rule to mean "that it could disclose its expert's declaration for the first time with its opening claim construction brief." Id. at *2. The Court rejected this argument because "Local Rule 4-3(b) *does* require the filing of any expert report simultaneously with the JCCPS." Id. (emphasis in original).

Consistent with its prior rulings, the Court finds here that AVC did not properly disclose Dr. Clarksean's testimony as required by the Federal Rules and the Court's Patent Local Rules. Thus, the declaration must be stricken or excluded unless AVC's failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The Court finds that AVC's failure to comply with the rules was neither justified nor harmless. AVC has provided no justification for its failure, and the failure was not harmless. Due to the belated expert disclosure, Asetek had no opportunity to take Dr. Clarksean's deposition in advance of its opening brief or to offer its own expert declaration to address the opinions likely to be offered by Dr. Clarksean. See Wong v. Regents of Univ. of California, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties ... is not harmless.").

The Court will disregard the Declaration of Dr. Randy Clarksean and the exhibits to his declaration, ECF No. 95.

**III.    LEGAL STANDARD**

The construction of terms found in patent claims is a question of law to be determined by the court. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting

Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)); see also MySpace, Inc. v. GraphOn Corp., 672 F.3d 1250, 1256 (Fed. Cir. 2012) (when construing claims, courts must consider "what was invented, and what exactly was claimed."). The "correct construction," therefore, is one that "stays true to the claim language and most naturally aligns with the patent's description of the invention." Id. While not every claim term must be construed, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1362 (Fed. Cir. 2008); see also Every Penny Counts, Inc. v. Am. Express Co., 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved.") (citation omitted).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention.'" Phillips, 415 F.3d at 1312 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Federal Circuit has held that words of a claim are generally given their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1312-13. In some cases, the ordinary meaning of claim language is "readily apparent," and "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Claim construction may deviate from the ordinary and customary meaning of a disputed term only if "a patentee sets out a definition and acts as his own lexicographer" or if "the patentee disavows the full scope of a claim term either in the specification or during prosecution." Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing Vitronics Corp v. Conceptronic, Inc., 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

In claim construction, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." Phillips, 415 F.3d at 1314. The "context in which a term is

4

used in the asserted claim," "[o]ther claims of the patent in question, both asserted and unasserted," and "[d]ifferences among claims" are all instructive. Id. "The claims, of course, do not stand alone" and instead "must be read in view of the specification," which is "[u]sually . . . dispositive" and "the single best guide to the meaning of a disputed term." Id. at 1315. Courts "normally do not interpret claim terms in a way that excludes disclosed examples in the specification." Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1305 (Fed. Cir. 2007). Additionally, the Federal Circuit has cautioned that "limitations from the specification are not to be read into the claims." Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998). Even if a patent describes only a single embodiment, the Federal Circuit has "expressly rejected" the contention that the claims must be construed as being limited to that embodiment. Phillips, 415 F.3d at 1323. In addition to consulting the specification, "the court should also consider the patent's prosecution history." Markman, 52 F.3d at 980 (citing Graham v. John Deere Co., 383 U.S. 1, 33 (1966)). However, because the "prosecution history represents an ongoing negotiation between the [Patent and Trademark Office] and the applicant, rather than the final product," it "often lacks the clarity of the specification" and therefore "is less useful." Phillips, 415 F.3d at 1317.

Though intrinsic evidence – the claims, specification, and prosecution history – is more significant and reliable than extrinsic evidence, courts may also consider the extrinsic record in claim construction, including expert and inventor testimony, dictionaries, and learned treatises. Id. at 1317-18. Within the class of extrinsic evidence, dictionaries, and especially technical dictionaries, "can assist the court in determining the meaning of particular terminology to those of skill in the art" because they "endeavor to collect the accepted meanings of terms used in various fields of science and technology." Id. at 1318.

/ / /
/ / /
/ / /
/ / /
/ / /

5

## IV. DISPUTED CLAIM TERMS

### A. "reservoir" ('362 Patent, claims 14, 15-17, 18; '764 Patent, claims 1, 2, 9-11, 13, 15, 18, 21, 22, 25, 26, 28-30)

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| "A receptacle for holding and retaining liquid." | "single receptacle defining a fluid flow path" |

#### 1. "a receptacle" vs. "single receptacle"

The parties agree that reservoir would "generally mean 'receptacle' to a person of ordinary skill in the art." ECF No. 86 at 12. AVC proposes "a receptacle" while Asetek proposes "single receptacle." Asetek "acknowledges that AVC's construction of 'reservoir' as '*a* receptacle' should also mean that 'the reservoir' must be only one receptacle. ECF No. 86 at 13. However, Asetek asks the Court to construe reservoir as a "single receptacle" to provide clarification that the claimed reservoir is a single receptacle and to avoid any arguments that the reservoir was formed by connecting two receptacles.[2] ECF No. 86 at 13.

Ordinarily, inserting the word "single" would be unnecessary because the term "reservoir" is singular and not plural. However, given that AVC does not address this argument or the dispute between "a receptacle" and "single receptacle" in its opposition, and in the interest of judicial efficiency, the Court will construe the term reservoir as "a single receptacle." See ECF No. 94 at 10 – 14.

#### 2. "for holding and retaining liquid" vs "defining a fluid flow path"

The parties also dispute the purpose and function of the reservoir. In Phillips, 415 F.3d 1303, 1319 (Fed. Cir. 2005), the Federal Circuit noted that some of its past cases suggested an approach "to claim construction, in which the court has given greater emphasis to dictionary definitions of claim terms and has assigned a less prominent role to the specification and the prosecution history." The Phillips court clarified that it "viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms." Id. at 1318. It also noted that general purpose dictionaries "may be helpful" in cases where "the

---

[2] Asetek asserts that defendants in prior litigation took this position.

6

ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words," but that "[i]n many cases that give rise to litigation . . . determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art," an endeavor in which general purpose dictionaries are not useful. Id. at 1414.

Against this backdrop, the Court evaluates AVC's argument that its definition of "reservoir" is closer to the definition adopted in prior cases and various general purpose dictionaries.[3] ECF No. 94 at 10-11. These prior cases also relied on general purpose dictionary definitions of reservoir. See Asetek Holdings, Inc. v. CoolIT Sys. Inc., No. C-12-4498 EMC, 2013 WL 6327691, at *5 (N.D. Cal. Dec. 3, 2013), aff'd sub nom. Asetek Danmark A/S v. CMI USA Inc., 842 F.3d 1350 (Fed. Cir. 2016); TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C., 375 F.3d 1126, 1134-35 (Fed. Cir. 2004). Thus, these definitions are informative, the Court is not bound by them.

Asetek contends that AVC's construction "could imply that the 'reservoir' stores fluid in a static state without fluid flow or movement." ECF No. 86 at 13. Asetek argues that the patent claims and the description of the exemplary embodiments show that "the cooling fluid continuously flows through the fluid chambers and the passageways within the 'reservoir'" and that "the claim language itself requires that the 'reservoir' include chambers through which the cooling liquid flows." ECF No. 86 at 14.

The Court begins with the words of the claims themselves. Phillips, 415 F.3d at 1314. Claim 14 of the '362 patent and claim 1 of the '764 patent states that the cooling system is comprised of a reservoir "adapted to pass a/the cooling liquid therethrough." '362 patent at 19: 59-60; '764 patent at 27: 47. It is apparent from the words of the claim that the cooling liquid passes through the reservoir, and is not simply retained in it. Therefore, the Court adopts Asetek's construction of reservoir as "single receptacle defining a fluid flow path."

---

[3] The Court will take judicial notice of the dictionary definitions. See BVD Licensing Corp v. Body Action Design, 846 F.2d 727, 728 (Fed. Cir. 1988).

B. **"substantially circular passageway"** ('362 Patent claim 14)

| AVC's Proposed Construction[4] | Asetek's Proposed Construction[5] |
|---|---|
| "passage with a circular exterior" | "generally circular opening" |

First, the Court considers Asetek's argument that AVC's construction "improperly reads [the word] 'substantially' out of the claims." ECF No. 98 at 12. Asetek argues, and AVC does not dispute, that there "is ample authority that 'substantially' is a meaningful and proper modifier that is often used in patent claims to mean 'approximately' rather than 'perfect.'" ECF No. 98 at 12; ECF No. 94 at 14-18. The Court agrees. See e.g Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("The term "substantial" is a meaningful modifier implying 'approximate,' rather than 'perfect.'"); Apple, Inc. v. Samsung Elecs. Co., 932 F. Supp. 2d 1076, 1081 (N.D. Cal. 2013) ("Other Federal Circuit cases have also held that the term "substantially" does not require a strict numerical boundary.").

The Court next considers whether "passageway" should be construed as "opening." A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips, 415 F.3d at 1312-13. Claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution. Thorner, 669 F.3d at 1365.

Here, Asetek calls the Court's attention to claim 14 of the '362 patent, which states that the reservoir includes "one or more passageways, at least one of the one or more passageways being a

---

[4] AVC initially proposed "passage with a circular exterior along at least one edge" or "passage with at least one circular edge." ECF no. 78 at 5. AVC proposed "passage with a circular exterior" in its responsive claim construction brief. ECF No. 94 at 18.
[5] Asetek initially proposed "a generally circular opening on a surface of the horizontal wall." ECF No. 78 at 5. Asetek proposed "generally circular opening" in its reply claim construction brief. ECF No. 98 at 14.

8

substantially circular passageway positioned on the horizontal wall." '362 patent at 19: 55-66; 20: 1. This claim provides support for Asetek's position that a substantially circular passageway is positioned on the horizontal wall, but Asetek dropped "on a surface of the horizontal wall" from its proposed definition. ECF No. 98 at 12. Asetek also argues that Figure 15 of the '362 patent depicts an "opening." ECF No. 86 at 16. To support this argument, Asetek includes expert testimony from Dr. Donald Tilton that "one of ordinary skill in the art would have understood the claim term 'substantially circular passageway' in the '362 patent to mean an opening that is generally circular." ECF No. 86-9 ¶ 20.

Asetek does not provide any support for replacing "passageway"—a non-technical term that a lay juror would have no trouble understanding—with "opening." Also, while "opening" might be one permissible reading of the word "passageway" in the context of this patent, nothing contained in the intrinsic evidence suggests it is the only one. Thus, the Court finds that Asetek has not offered a sufficient justification to deviate from the ordinary and customary meaning of "passageway."

The Court construes the term "substantially circular passageway" as "generally circular passageway."

### C. "positioned on" ('362 Patent claims 14, 17; '764 Patent, claim 1)

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| "above and physically contacted with" | Plain and ordinary meaning. No construction needed. |

Asetek argues that this term requires no construction. ECF No. 86 at 17. AVC argues that its proposed definition is supported by English language dictionaries. ECF No. 94 at 18.

The Court agrees with Asetek that this term requires no construction. It is a straightfoward non-technical term that a lay juror would have no trouble understanding. Further, AVC's proposed definition would render claim 1 of the '764 patent nonsensical. Claim 1 of the '764 patent states that the impeller is "positioned on the underside of the chassis" and the stator is "positioned on the upper side of the chassis." '764 Patent at 17: 42-45. AVC's proposed construction is incompatible with claim 1 of the '764 patent because it would require both the

9

impellor and the stator to be located above the chassis. This construction cannot be correct. See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical cannot be correct.") (internal quotation marks and citations omitted).

The Court finds that this term should be given its plain and ordinary meaning.

### D. "horizontal wall" ('362 Patent, claims 14, 17)

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| "Planar surface" | Plain and ordinary meaning, or in the alternative, "a wall that is approximately parallel to the heat exchanging interface" |

Asetek argues that this term requires no construction, or in the alternative should be construed as "a wall that is approximately parallel to the heat exchanging interface." ECF No. 86 at 19. AVC proposes the construction "planar surface." ECF No. 94 at 19.

The Court agrees with Asetek that this term requires no construction. It consists of two straighforward, non-technical terms that a lay juror would have no trouble understanding. In its response, AVC defends its proposed construction against Asetek's attacks. ECF No. 94 at 19-21. However, AVC provides no support for its contention that "horizontal wall"—a straightforward term—needs to be construed in the first place. The Court finds that this term should be given its plain and ordinary meaning.

### E. "substantially circular passageway positioned on the horizontal wall" ('362 Patent, claim 14)

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| See "substantially circular passageway" and "horizontal wall," above | "a generally circular opening on a surface of the horizontal wall" |

AVC does not address this claim term in its responsive brief. See ECF No. 94. Asetek argues that its proposed construction "proposed a positional relationship between the 'substantially circular passageway' and the 'horizontal wall,' which is otherwise ignored by separate constructions of these terms." ECF No. 98 at 16.

10

United States District Court
Northern District of California

The Court has already construed "substantially circular passageway" as "generally circular passageway." And, the Court has found that "positioned on" and "horizontal wall" require no construction. Given the Court's prior constructions, the Court concludes that this larger phase requires no further construction beyond those already provided. The Court construes "substantially circular passageway positioned on the horizontal wall" as "generally circular passageway positioned on the horizontal wall." The Court is satisfied that this construction accounts for the "positional relationship" between the passageway and the horizontal wall.

**F. "fluidly coupled" ('362 Patent, claims 14, 17; '764 Patent, claims 1, 6, 9, 13, 15, 27, 28, 30)**

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| "Fluidly connected/connect" | "in fluid communication" |

The term fluidly coupled appears with various propositions in claims in both the '362 patent and the '764 patent. In its opening brief, Asetek expresses concern that AVC's proposed construction "might imply a direct connection between the two parts or features of the cooling system." ECF No. 86 at 22. Asetek argues that the "fluid flow between two features or parts of the claimed cooling system can be either direct or indirect." Id. at 22. In its responsive brief, AVC argues that its definition, "fluidly connected," does not "necessarily infer a 'direct connection' only, and includes both direct and indirect connections." ECF No. 94 at 22. Given AVC's agreement that the term "fluidly coupled" suggests indirect and direct connections, Asetek proposes "fluidly connected (direct and indirect)" in its reply brief. ECF No. 98. During the claim construction hearing, AVC agreed to this proposal. Therefore, the Court construes "fluidly coupled" as "fluidly connected (direct and indirect)."

**G. "placed in separable thermal contact"/ "separably thermally coupling" ('362 Patent, claim 14)**

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary. | placed detachably and in thermal contact |

AVC argues that the replacement of the words "separable" and "separably" with

11

"detachably," as Asetek suggests, is unnecessary, so the Court should not construe the phrases at all. ECF No. 94. Asetek argues that this phrase does not have an ordinary meaning and should be construed in the context of the '362 patent's disclosure. ECF No. 86 at 23. Asetek contends that this term represents two distinct features of the claimed invention: "first, the pump unit is mounted in such a manner that it can be detached from the motherboard…and second, the pump unit is mounted in close thermal contact with the CPU to facilitate heat transfer." ECF No. 86 at 24. Asetek contends that replacing "separable" and "separably" with "detachably" is necessary to assist the jury in understanding "these two distinct features incorporated within a single claim term." ECF No. 98 at 17.

The disclosures of the '362 patent support Asetek's contention that the pump unit is "mounted in such a manner that it can be detached from the motherboard" and that "the pump unit is mounted in close thermal contact with the CPU." See '362 patent at 2: 5-8; 8: 23-37; 9: 42-47, 56-57; 17: 47-58. Furthermore, AVC does not disagree with this contention. While AVC argues that replacing "separably" with "detachably" is not necessary, the court finds that this construction will provide clarity to the jury in understanding the meaning of this claim term. See Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1360 (Fed. Cir. 2008) ("claims are construed as an aid to the decision-maker, by restating the claims in non-technical terms") (internal citations omitted). Therefore, the Court construes "placed in separable thermal contact/separably thermally coupling" as "placed detachably and in thermal contact."

### H. "the heat exchange interface being removably attached/coupled to the reservoir" ('262 Patent, claims 14, 17)

| AVC's Proposed Construction | Asetek's Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary | "the heat exchanging interface and the rest of the reservoir having a non-unitary construction" |

The parties agree that "the heat exchange interface being removably attached to the reservoir" and "the heat exchange interface being removably coupled to the reservoir" should be construed in the same manner. Asetek argues that this claim was subject to two different interpretations in prior Asetek litigation. Specifically, Asetek notes that this claim term was

12

litigated in Asetek Danmark A/S v. CMI USA, Inc., where the defendant took the position that the claim term meant that "the 'heat exchange interface' (i.e., the cold plate) must be removable by a user using readily available tools, and further that the device must remain operational after removal of the cold plate." ECF No. 86 at 25. Asetek argues that its proposed construction clarifies that the removable cold plate limitation "simply means that the reservoir and the cold plate are not a unitary, one-piece structure." ECF No. 86 at 25. AVC argues that it has never advanced any similar arguments and that Asetek's proposed definition "is more complicated than the claim phrase itself." ECF No. 94 at 24.

"When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." O2 Micro Int'l Ltd, 521 F.3d at 1360 (internal citation omitted). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. Id. at 1361.

Here there is no dispute. AVC acknowledges that "according to the terms of the patent itself, the cold plate and reservoir are to be 'removably attached/coupled.'" ECF No. 94 at 24. Both parties agree that the cold plate and reservoir can be removed. However, the claim may still be construed to aid the jury. See Abbott Labs, 544 F.3d at 1360. But here, the Court finds that "removably attached to the reservoir" or "removably coupled to the reservoir" is no more difficult, and in fact may be easier, for the jury to understand than "having a non-unitary construction." Therefore, the Court finds that this term should be given its plain and ordinary meaning.

## CONCLUSION

The Court construes the parties' disputed claim terms as follows:

| Claim Term | Court's Construction |
|---|---|
| "reservoir" ('362 Patent, claims 14, 15-17, 18; '764 Patent, claims 1, 2, 9-11, 13, 15, 18, 21, 22, 25, 26, 28-30) | "single receptacle defining a fluid flow path." |
| "substantially circular passageway" ('362 Patent claim 14) | "generally circular passageway" |

13

| **Claim Term** | **Court's Construction** |
|---|---|
| "positioned on" ('362 Patent claims 14, 17; '764 Patent, claim 1) | Plain and ordinary meaning |
| "horizontal wall" ('362 Patent, claims 14, 17) | Plain and ordinary meaning |
| "substantially circular passageway positioned on the horizontal wall" ('362 Patent, claim 14) | "generally circular passageway positioned on the horizontal wall." |
| "fluidly coupled" ('362 Patent, claims 14, 17; '764 Patent, claims 1, 6, 9, 13, 15, 27, 28, 30) | "fluidly connected (direct and indirect)." |
| "placed in separable thermal contact"/ "separably thermally coupling" ('362 Patent, claim 14) | "placed detachably and in thermal contact |
| "the heat exchange interface being removably attached/coupled to the reservoir" ('262 Patent, claims 14, 17) | Plain and ordinary meaning |
| "double-sided chassis" | "a two-sided frame or housing, each side of which has a purpose" |

**IT IS SO ORDERED.**

Dated: January 17, 2018



_____
JON S. TIGAR
United States District Judge