UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASIA VITAL COMPONENTS CO., LTD.,

Plaintiff,

v.

ASETEK DANMARK A/S,

Defendant.

Case No. 16-cv-07160-JST

**ORDER RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE**

Re: ECF Nos. 180, 185, 186

Before the Court are cross-motions for partial summary judgment filed by Plaintiff/Counter-Defendant Asia Vital Components Co. ("AVC") and Defendant/Counter-Claimant Asetek Danmark A/S. ECF Nos. 180, 186. Asetek has also filed several requests to strike. ECF No. 185. The Court will grant the motions to strike in part, grant Asetek's motion for partial summary judgment, and deny AVC's motion for partial summary judgment.[1]

## I.    BACKGROUND

The Court briefly sets out the nature and history of this dispute, then reviews the factual record in greater detail where relevant below.[2] This case concerns two patents, held by Asetek, that describe a liquid cooling device for the central processing unit of a computer:  U.S. Patent Nos. 8,240,362 ("the '362 patent") and 8,245,764 ("the '764 patent"). ECF Nos. 180-13, 180-14.

---

[1] The Court has filed this order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this order, the parties shall provide the Court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and for which the parties still request the material be sealed. The Court will then issue a redacted version of the order.

[2] Given the parties' cross-motions for summary judgment, the Court presents the facts herein so far as they are undisputed. Where relevant to a contested issue, the Court construes them below in the light most favorable to the non-movant.

Claim 1 of the '362 patent is illustrative:

> 1. A cooling system for a computer processing unit, comprising:

> an integrated element including a heat exchanging interface, a reservoir, and a pump, wherein

>> the reservoir is configured to receive a cooling liquid from outside the reservoir through an inlet and pass the cooling liquid to the outside through an outlet, the reservoir including an upper chamber and a lower chamber, the upper chamber and the lower chamber being vertically displaced chambers that are separated by at least a horizontal wall and fluidly coupled together by a plurality of substantially circular passages, at least one of the plurality of substantially circular passages being positioned on the horizontal wall, a boundary wall of the lower chamber being formed by the heat exchanging interface;

>> the heat exchanging interface is adapted to provide separable thermal contact between the processing unit and the cooling liquid such that heat is dissipated from the processing unit to the cooling liquid as the cooling liquid passes through the lower chamber of the reservoir; and

>> the pump is adapted to direct the cooling liquid through the upper chamber and the lower chamber of the reservoir, the pump including a motor having a rotor, a stator and an impeller having a plurality of curved blades, the impeller being positioned within the reservoir;

>> a heat radiator spaced apart from the integrated element, the heat radiator being fluidly coupled to the outlet and the inlet of the reservoir, the heat radiator being configured to circulate the cooling liquid therethrough and exhaust heat from the cooling liquid; and

>> a fan configured to direct air through the heat radiator, the fan being driven by a motor separate from the motor of the pump.

ECF No. 180-13 at 18:50-19:18.

The patents issued on August 14, 2012, and August 21, 2012, respectively. ECF No. 180-13 at 2; ECF No. 180-14 at 2. Asetek then filed two separate actions in this district against different entities (who are not parties to this action), asserting that their products infringed the patents. *See Asetek Holdings, Inc. v. Coolit Sys. Inc.*, 12-cv-04498-EMC, ECF No. 1 (August 27, 2012); *Asetek Danmark A/S v. CMI USA, Inc.*, 13-cv-00457-JST, ECF No. 1 (January 31, 2013).

The parties agree that Asetek sent a letter to AVC dated April 30, 2014, alleging that the Liqmax 120 product and related products – sold by one of AVC's customers, Enermax – also infringed the patents. ECF No. 1 ¶ 22; ECF No. 186 at 20; ECF No. 203-12 at 2. After additional correspondence in which AVC apparently responded that it had no relationship to the Liqmax

products identified, Asetek sent an email to AVC on August 2, 2014, informing AVC of its belief that "AVC is likely selling other infringing products in the United States." ECF No. 203-12 at 2. Asetek's CEO testified that, in a subsequent meeting, AVC attempted to obtain a license for the patents. ECF No. 202-7 at 241:20-243-10. AVC does not dispute that the meeting took place.

On September 30, 2014, AVC filed a complaint in the U.S. District Court for the Eastern District of Virginia, requesting declaratory relief that its products – which it designated as the K7 and K9 products – did not infringe the '362 or '764 patents. *See* ECF No. 1. AVC claimed that (1) the products did not infringe the patents-in-suit; and (2) the patents-in-suit were invalid. *See id.* After proceedings not directly relevant here, the case was transferred to this Court in December 2016. ECF No. 37.

On July 14, 2017, Asetek filed counter-claims for direct, induced, contributory, and willful infringement, alleging that at least the AVC K7127N, K7 1.5, and K9, and Riotoro Bifrost 120Ti/240 products infringed the '362 and '764 patents. *See* ECF No. 73. On January 17, 2018, the Court issued its claim construction order. ECF No. 105. Asetek subsequently amended its infringement contentions to cover the AVC 1.5, 2.0, K7127N, and K9 products (the "accused products"). *See* ECF Nos. 125, 130.

On November 30, 2018, Asetek filed a motion for partial summary judgment on AVC's invalidity and equitable defenses. ECF No. 180. Asetek also filed a motion to strike portions of AVC's expert's non-infringement report. ECF No. 185. AVC filed a cross-motion for partial summary judgment on December 6, 2018, on a series of issues, including its liability for induced, contributory, or willful infringement, as well questions related to extraterritorial sales and Asetek's compliance with product marking requirements. ECF No. 186.

## II.     EVIDENTIARY OBJECTIONS

Asetek has filed a separate motion to strike portions of Dr. Clarksean's rebuttal non-infringement report. ECF No. 185. In the course of briefing on the motions for summary judgment, Asetek also requested that the Court strike Dr. Clarksean's declaration attached in support of AVC's motion for summary judgment, ECF No. 203 at 20-23, and Dr. Joshi's declaration attached in support of AVC's opposition to Asetek's motion for summary judgment,

1   ECF No. 205 at 5-8. The Court resolves these disputes before reaching the merits of the parties'

2   summary judgment motions.

3        **A.**     **Legal Standard**

4        Federal Rule of Civil Procedure 26(a)(2)(B) requires a witness who is "retained or

5   specially employed to provide expert testimony in the case" to provide a written report containing,

6   among other things, "(i) a complete statement of all opinions the witness will express and the basis

7   and reasons for them," and "(ii) the facts or data considered by the witness in forming them." Fed.

8   R. Civ. P. 26(a)(2)(B). In addition, Rule 26(e)(1) imposes an obligation on a party "who has

9   responded to an interrogatory" to "supplement or correct its disclosure or response (A) in a timely

10   manner if the party learns that in some material respect the disclosure or response is incomplete or

11   incorrect, and if the additional or corrective information has not otherwise been made known to

12   the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1).

13        Rule 37, in turn, "gives teeth to Rule 26's disclosure requirements by forbidding the use at

14   trial of any information that is not properly disclosed." *Goodman v. Staples The Office*

15   *Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal quotation marks and citation

16   omitted).[3] Rule 37(c)(1) thus requires exclusion unless the offending party carries its burden "to

17   demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless."

18   *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008). For instance, where an expert

19   fails to provide a theory in the report, a court may "preclud[e] him from testifying on this issue."

20   *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1062 (9th Cir. 2008); *see also*

21   *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (applying Rule

22   37(c)(1) where "expert witnesses submitted affidavits that contained new opinions not previously

23   disclosed as required by Federal Rule of Civil Procedure 26(a)(2)(B)"); *Hoffman v. Constr.*

24   *Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (applying Rule 37(c)(1) to a violation

25   of Rule 26(e)(1)(A)).

26

27

28

---

[3] Because "[a] decision to sanction a litigant pursuant to Fed.R.Civ.P. 37 is one that is not unique to patent law," the Court applies Ninth Circuit precedent to these issues. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1304 (Fed. Cir. 2009) (citation omitted).

**B.      Dr. Clarksean's Rebuttal Non-Infringement Report**

Asetek requests that the Court strike from Dr. Clarksean's report the theory that the K9 and M5 products do not infringe the '764 patent because the pump stator of those products is not "isolated from the cooling liquid."  ECF No. 185 at 6.  Asetek argues that AVC failed to disclose this theory in its answer to Asetek's August 2, 2017 interrogatory requesting the factual and legal bases for AVC's non-infringement contentions.  *See* ECF No. 185-2 at 3-4; ECF No. 185-3.  Instead, Asetek contends, AVC advanced this theory for the first time in Dr. Clarksean's rebuttal report, which it served on October 26, 2018.  ECF No. 185 at 8; ECF No. 185-1 ¶ 9.

In its opposition, AVC first argues that it was not required to supplement its interrogatory response with these details, and therefore did not violate Rule 26(e)(1).  ECF No. 199 at 10-11, 13.  AVC reasons that, because Asetek bears the burden of proof on the question of infringement, AVC did not need to "divulge its fully-crystallized non-infringement arguments upon which [it] would rely at trial, because the deadline for AVC's rebuttal expert report on non-infringement served that purpose."  ECF No. 199 at 13.

The parties rely on cases from this district suggesting opposite conclusions.  AVC cites *MediaTek Inc. v. Freescale Semiconductor, Inc.*, where the court rejected a request to strike validity theories that were provided in an expert rebuttal report, but not disclosed in response to an earlier interrogatory.  No. 11-CV-5341-YGR, 2014 WL 2854773, at *4 (N.D. Cal. June 20, 2014).  The *MediaTek* court reasoned that, "by propounding [its] interrogatory right on the heels of serving its invalidity contentions, [the accused infringer] was trying to get a preview of what [the patentee's] rebuttal report would say."  *Id.* at *5.  Deeming this "gamesmanship," the court stated that it would "not penalize [the patentee] for providing its response – its expert rebuttal report – at the time appointed by the Court's scheduling order."  *Id.*

Asetek, on the other hand, relies on *Apple, Inc. v. Samsung Elecs. Co.*, where the court granted a similar request to the one Asetek makes here, faulting Samsung for its "failure to disclose its non-infringement theories prior to the rebuttal expert reports," given that Samsung "had a duty to amend its answers to contention interrogatories in a timely manner."  No. 11-CV-

United States District Court
Northern District of California

01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012).[4]

The Court finds the rule set forth in *Samsung* more persuasive. A rule that an accused infringer may wait until its expert rebuttal report to set forth theories of non-infringement for the first time would forfeit the benefits of contention interrogatories. As the Federal Circuit has explained, such interrogatories "serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). Because "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape . . . . Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes." *Id.* The Court finds nothing in the text of this district's patent rules relieving parties arguing non-infringement of that obligation. Rather, the rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed" – not defer the disclosure of those theories until the expert rebuttal stage. *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2018 WL 6046465, at *2 (N.D. Cal. Nov. 19, 2018) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006)).

The Court next turns to AVC's arguments that it did not violate Rule 26(e)(1) because the information was conveyed to Asetek through alternate means. AVC asserts that it satisfied its obligations by providing physical copies of the K9 and M5 products in a timely manner. ECF No. 199 at 11. AVC cites no support for this position and, in any event, providing an example of the accused product plainly does not substitute for answering a contention interrogatory. *Cf. Woods*, 692 F.3d at 1280. AVC likewise cannot fulfill its obligation by now point to a single table

---

[4] Asetek attempts to distinguish *MediaTek* on the basis that it involved invalidity and a patent's validity is presumed, while there is no corresponding presumption of non-infringement applicable in *Samsung* or here. ECF No. 206 at 6. The Court does not read *MediaTek* to rely on the presumption of patent validity to any significant degree, and accordingly is unable to reconcile that case with *Samsung*.

1   indicating that the K9 had a submersible pump, ECF No. 200-4 at 2, which was not produced in

2   response to the interrogatory. The post-hoc identification of a needle in a haystack does not cure

3   AVC's failure to respond. *See Apple, Inc.*, 2012 WL 3155574, at *5.

4       Next, AVC points to its Rule 30(b)(6) witness's deposition testimony on September 18 and

5   19, 2018. ECF No. 199 at 12. Assuming without deciding that this testimony could ever suffice

6   to meet AVC's discovery obligations, the Court finds that it does not do so in this instance.

7   Huang stated that the K9 differed from the 1.5 product because it "uses an immersive pump."

8   ECF No. 183-4 at 101:24-102:2. When asked to explain the term "immersive pump," Huang

9   responded, "I'm not – I don't know the detailed technology" and gave no additional explanation.

10  *Id.* at 102:20-22. This exchange does not disclose in any discernible manner the basis for Dr.

11  Clarksean's theory. In addition, AVC mischaracterizes Asetek's motion as conceding that Asetek

12  gleaned this theory from Huang's testimony. ECF No. 199 at 12. Asetek offered unrebutted

13  evidence that it did not understand AVC's position at the time, *see* ECF No. 185-1 ¶ 11, and stated

14  that once it received Dr. Clarksean's rebuttal report, it understood Huang's testimony as revealing

15  that "AVC intended to argue, even when it was developing its products, that the K9 and M5 do not

16  infringe" based on the theory at issue. ECF No. 185 at 12. The thrust of this discussion is when

17  *AVC* knew of its own theory, not when Asetek came to understand it.

18      The Court further agrees with Asetek that Huang's testimony that AVC used this "entirely

19  different pump" to "try to design around Asetek's patents" provides unrebutted evidence that AVC

20  was fully aware of this theory at the time it received the interrogatory. ECF No. 183-4 at 120:2-4;

21  120:20-22. Accordingly, AVC cannot claim that it did not discover this theory until it received

22  Dr. Tilton's infringement report. ECF No. 199 at 13.

23      The Court therefore concludes that AVC violated its Rule 26(e)(1) obligations by failing to

24  disclose its theory in response to Asetek's contention interrogatory.

25      The Court further finds that AVC has not carried its burden to demonstrate that its failure

26  was not "substantially justified or harmless." *Torres*, 548 F.3d at 1213 (emphasis omitted)

27  (quoting Fed. R. Civ. P. 37(c)(1)). As just noted, the record reveals that AVC has been aware of

28  this theory since the outset of this litigation. AVC offers no justification for failing to include it in

its interrogatory responses, but instead attempts to show that other actions conveyed the same information, i.e., that its failure was harmless. As explained above, AVC's argument that it had no obligation to supplement its responses lacks merit. Therefore, AVC's conduct was not substantially justified.

Nor was it harmless. By waiting until its expert rebuttal report to disclose its theory, AVC prevented Asetek from conducting fact discovery on the issue, thereby hampering its expert discovery as well. *See Apple, Inc.*, 2012 WL 3155574, at *5 ("Although expert discovery had not yet concluded, the experts were in effect locked-in to the factual record as of the time fact discovery closed and could not test the factual basis for the newly amended contentions by conducting additional discovery."). It also deprived Asetek of the ability to fully question AVC's deposition witnesses on the subject.

The factors that AVC cites do not overcome this prejudice. AVC did not give Asetek prior notice of its position through other means, as discussed above. AVC's reliance on Dr. Tilton's ability to locate the stator when asked in his deposition, ECF No. 199 at 16-17, is not responsive to the material dispute identified by Asetek as to what portions of the accused products actually constitute the "stator." ECF No. 185 at 13. It is no answer, as AVC suggests, ECF No. 199 at 18, that Asetek can request leave to submit a supplemental expert report. *See K. P. v. Santa Clara Cty. Office of Educ.*, No. 5:15-CV-01512-EJD, 2016 WL 5930641, at *3 (N.D. Cal. Oct. 12, 2016) ("Defendants cannot just blithely offer a schedule modification and expect Plaintiffs to accept it as a way to alleviate the problem they created and the prejudice they inflicted."). Finally, while AVC argues that its theory is important to its case, it has other non-infringement theories for these same claims. *See* ECF No. 185-1 ¶¶ 9-10.[5]

Accordingly, the Court grants Asetek's motion to strike the disputed theory from Dr. Clarksean's expert rebuttal non-infringement report.

---

[5] Accordingly, the Court need not "consider whether the claimed noncompliance involved willfulness, fault, or bad faith" or "the availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

### C.     Dr. Joshi's Declaration

In support of its opposition to summary judgment, AVC attached a declaration from Dr. Joshi, the author of AVC's expert invalidity report. ECF No. 194-1. On reply, Asetek requests that the Court strike new opinions and theories introduced in Joshi's declaration. ECF No. 205 at 5-8. AVC did not request leave to file a sur-reply or otherwise oppose this request.

The Court first considers whether the Joshi declaration goes beyond "a reasonable synthesis and/or elaboration of the opinions contained in [his] report." *LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-CV-01268-JST, 2018 WL 6257460, at *1 (N.D. Cal. Nov. 30, 2018) (citation omitted); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 12622055, at *4 (N.D. Cal. Mar. 19, 2015) (same).

To the extent the Joshi declaration opines that there were general industry-level trends "to increase the effectiveness and minimize the volume of the heat dissipation module in the field of thermal management," ECF No. 194-1 ¶ 2, the Court finds that it is a reasonable synthesis of the background sections of his invalidity report, *see* ECF No. 180-2 at 9-11; ECF No. 180-4 at 9-11. But the Joshi declaration goes much further, stating his opinion that pursuit of this "miniaturization" or "integration" goal would have motivated a person of ordinary skill in the art to combine prior art references in the specific combinations set forth in the remainder of his expert report. *See* ECF No. 194-1 ¶¶ 2-8, 12-14, 17-19, 26-29. There is simply no corresponding discussion of miniaturization as applied to any prior art in Dr. Joshi's report. This absence is underscored by the fact that the Joshi declaration makes no attempt to link its contents to any specific discussion in the report, instead citing to the portions of Dr. Joshi's deposition testimony that are helpful to AVC. *See id.* ¶¶ 3-6.[6] The Court finds that these opinions impermissibly exceed the scope of Dr. Joshi's expert report.

The Joshi declaration also opines on whether various prior art references disclose certain limitations of the patents-in-suit. As this Court has previously held, an invalidity report must be

---

[6] As Asetek notes, Dr. Joshi first testified that his report contained "no motivation or rationale" for any of the asserted combinations. ECF No. 180-7 at 73:17-79:9. On redirect, however, Dr. Joshi testified that a miniaturization rationale applied to each prior art reference. *Id.* at 164:21-166:10.

specific as to which item of the prior art discloses which element of the disputed claim. *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2014 WL 6997670, at *1 (N.D. Cal. Dec. 9, 2014) (striking post-report testimony that a new item of the prior art disclosed a thermal exchange chamber). It is difficult to see how, absent some clarifying function, Dr. Joshi's opinions regarding the connection between the prior art references and claim limitations, *id.* ¶¶ 10-16, 23-25, are not either unnecessarily redundant with his expert report or impermissibly beyond its scope.

The Court perceives only one such potential ambiguity. Dr. Joshi's expert report uses the following diagram from Schmidt[7]:



*See* ECF No. 180-2 at 35; ECF No. 180-4 at 29; ECF No. 180-20 at Fig. 1. The diagram displays two labeled vertical supply manifolds (32), each of which has connected horizontal bars. The horizontal bars attached to the righthand manifold are labeled as atomizer plates (34), while the opposing set of horizontal bars are not. Nonetheless, a review of Schmidt suggests that both sets are intended to represent atomizer plates. *See* ECF No. 180-20 at 2:63-65 ("The supply manifolds 32 have an atomizer plate 34 in communication with each outlet of the supply manifold . . . ."). Dr. Joshi's expert report, however, at times treats the letfhand set as "horizontal portion[s] . . . of the supply manifolds 32" rather than as a separate item. ECF No. 180-2 at 35; ECF No. 180-4 at 29. Arguably, then, Dr. Joshi's designation of the supply manifolds (32) as a heat exchange "chamber" – as depicted in his report – encompasses the atomizer plates (34).

_____

[7] U.S. Patent No. 6,447,270.

As to the remaining opinions in the Joshi declaration, AVC has provided no explanation why their omission from Dr. Joshi's report were either substantially justified or harmless, and so by default it has not carried its burden. *See Torres*, 548 F.3d at 1213. Moreover, it is doubtful that these failures were substantially justified given that AVC had access to all the relevant information regarding the patents and prior art at the time Dr. Joshi submitted his report. Nor can AVC show that it was harmless to add new theories in support of its invalidity claims at summary judgment, particularly now that discovery has closed. *See Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 938 (N.D. Ill. 2008).

Accordingly, the Court strikes the entire Joshi declaration except its opinions that (1) miniaturization is a generally applicable industry trend and (2) Schmidt's atomizer plates (34) disclose a heat exchange chamber.

**D.      Dr. Clarksean's Declaration**

As discussed below, even were the Court to consider the challenged opinions in Dr. Clarksean's declaration, ECF No. 186-2, it would still deny AVC's motion for summary judgment on those points. The Court therefore denies Asetek's request as moot.

**III.      LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable trier of fact to resolve the issue in the nonmovant's favor, and a fact is material only if it might affect the outcome of the case. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)). The court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of

11

proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

These standards apply equally to summary judgment motions involving patent claims. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984).

## IV. ASETEK'S MOTION FOR SUMMARY JUDGMENT

Asetek moves for summary judgment that (1) claims 1-19 of the '362 patent are not invalid; (2) claims 1-30 of the '764 patent are not invalid; and (3) various equitable defenses to infringement raised by AVC do not apply. ECF No. 180.

### A. Invalidity

#### 1. Legal Standard

Patents are presumed valid. 35 U.S.C. § 282(a). A party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). Accordingly, "a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). In evaluating whether the nonmoving party has produced such evidence, the Court follows normal summary judgment practice and "views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor." *Id.* (citing *Anderson*, 477 U.S. at 255).

"Both anticipation under § 102 and obviousness under § 103 are two-step inquiries." *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 933 (Fed. Cir. 2003). The first step is claim

construction. *Id.* The second step requires a comparison of the properly construed claims to the prior art. *Id.* For a claim to be anticipated under § 102, and thus invalid, "each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010). "Inherent anticipation requires that the missing descriptive material is necessarily present, not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (internal quotation marks omitted). Whether prior art anticipates the accused device is a question of fact. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010).

Under 35 U.S.C. § 103, a patent claim is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." "Obviousness is a legal question based on underlying factual determinations." *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1343 (Fed. Cir. 2017). These factual questions include (1) "the scope and content of the prior art"; (2) the "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and (4) any relevant secondary considerations (i.e., objective indicia of non-obviousness) – often referred to as the *Graham* factors. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)); *see also Intercontinental Great Brands*, 869 F.3d at 1343.

The Federal Circuit has emphasized that "[o]bjective indicia of nonobviousness must be considered in every case where present." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc). Also relevant is the factual question "whether the relevant skilled artisan had a motivation to combine pieces of prior art in the way eventually claimed in the patent at issue." *Intercontinental Great Brands*, 869 F.3d at 1343 (citing *Apple*, 839 F.3d at 1047-48, 1051). This question is distinct from "the ultimate legal determination of whether the claimed combination would have been obvious to the ordinary artisan – meaning that it is possible that a

13

reason or motivation may exist, but nonetheless the ordinary artisan would not have found the combination obvious." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017).

Importantly, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. On the other hand, "when a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 417 (internal quotation marks and citation omitted).

### 2. Invalidity of '362 Patent Claims

Rather than comprehensively addressing all of the *Graham* factors, Asetek offers two specific reasons why it is entitled to summary judgment that claims 1, 3, 5-7, 9, 13-15, and 17-19 of the '362 patent are not obvious.[8] First, Asetek contends that AVC has not provided evidence that prior art disclosed certain elements. ECF No. 180 at 19-22. Second, Asetek argues that AVC has failed to provide "an adequate explanation of the motivation to combine the asserted prior art references and a reasonable expectation of success from doing so." *Id.* at 14.

The Federal Circuit, sitting en banc, has cautioned that "[a] determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all four *Graham* factors, and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple Inc.*, 839 F.3d at 1048. Here, for instance, the parties have offered no evidence or argument on the "the level of ordinary skill in the pertinent art"[9] or identified whether "[o]bjective indicia of nonobviousness" exist. *Id.* at 1047-48 (citation omitted). Nonetheless, as the party that does not

---

[8] Asetek also argues that it is entitled to summary judgment on AVC's contentions that claims 1-19 are anticipated and claims 2, 4, 8, 10-12, and 16 are obvious because AVC produced no admissible theories support of those contentions. ECF No. 180 at 13-14. AVC's opposition does not attempt to revive any of those contentions, *cf.* ECF No. 194, and so the Court agrees that Asetek is entitled to summary judgment on those issues.

[9] Although not cited by the parties, a question asked at Dr. Joshi's deposition refers to the "category of people with college education in mechanical engineering." ECF No. 180-7 at 163:18-20. But neither the parties' briefs nor Dr. Joshi's expert report contain any definitive statement, let alone a reasoned discussion of the relevant level of skill.

1    bear the burden of proof at trial, Asetek may still obtain summary judgment by "negating an

2    essential element of" AVC's obviousness defense.  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at

3    1102.  The Court therefore considers whether Asetek's arguments reveal essential elements as to

4    which AVC "failed to produce clear and convincing evidence" to support a reasonable jury finding

5    in its favor.  *Eli Lilly & Co.*, 251 F.3d at 962.

6         The Court first rejects Asetek's argument that it is entitled to summary judgment solely

7    because "AVC has not shown that the limitation 'reservoir' including 'an upper chamber and a

8    lower chamber' that are separated by 'at least a horizontal wall' is present in any prior art

9    reference."  ECF No. 180 at 21-22.  "A claimed invention may be obvious even when the prior art

10   does not teach each claim limitation, so long as the record contains some reason why one of skill

11   in the art would modify the prior art to obtain the claimed invention."  *Nike, Inc. v. Adidas AG*,

12   812 F.3d 1326, 1335 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prod., Inc. v. Matal*,

13   872 F.3d 1290 (Fed. Cir. 2017) (en banc).  In other words, that each claim limitation be present in

14   the prior art is not an "essential element" whose absence entitles Asetek to summary judgment

15   without a comprehensive obviousness analysis.

16        Asetek's remaining briefing on this issue can be distilled into the argument that AVC

17   failed to produce evidence as to "*how* or *why* a person of ordinary skill in the art *would* have

18   modified Schmidt (not 'could' have) to arrive at the inventions claimed in the '362 patent."  ECF

19   No. 205 at 11.  In order to determine what modifications are necessary, however, the Court must

20   first review the record as to "the scope and content of the prior art" and the "differences between

21   the prior art and the claims at issue."  *KSR*, 550 U.S. at 406 (citation omitted).

22                            **a.    Scope and Content of Prior Art**

23        As to the scope and content of prior art, Asetek argues that Schmidt does not disclose the

24   limitation found in independent claims 1, 14, and 17 of a reservoir containing (1) "an upper

25   chamber and lower chamber" that are (2) "separated by at least a horizontal wall."  ECF No. 180

26   at 19-20; *see also* ECF No. 180-13 at 18:56-60, 19:60-64, 20:33-37.

27        AVC's opposition relies almost exclusively on Dr. Joshi's deposition testimony and

28   supplemental declaration.  *See* ECF No. 194 at 18-21.  As explained above, the Court disregards

such testimony except to the extent it is "either explicitly contained in his previously-provided expert report or 'a reasonable synthesis and/or elaboration of the opinions contained in [that] report.'" *CMI USA, Inc.*, 2014 WL 6997670, at *1 (quoting *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011)).

AVC first contends that item 34 of Schmidt, the atomizer plates, discloses a thermal exchange chamber. ECF No. 194 at 18-20. As discussed above, the Court finds that Dr. Joshi's report, as elaborated on in his deposition testimony, sufficiently sets forth this theory. *See* ECF No. 180-2 at 35; ECF No. 180-4 at 29; ECF No. 180-20 at Fig. 1. Asetek does not contest on the merits whether item 34 discloses this limitation, ECF No. 205 at 9-10, and construing the evidence in the light most favorable to AVC, a reasonable jury could so find.

Second, AVC notes that item 12 of Schmidt, the pump, is surrounded by a housing (40) that constitutes a second thermal exchange chamber. ECF No. 194 at 20; *see also, e.g.*, ECF No. 180-2 at 33; ECF No. 180-20 at Fig. 2. AVC reasons that Schmidt discloses a configuration in which the pump and its housing are vertically separate from the atomizer plates, thereby creating an upper and lower chamber. ECF No. 194 at 20. The Court disagrees with Asetek that this theory is new. Dr. Joshi's report states that because "[t]he pumps 12 may also be disposed outside of the reservoir 14 . . . . it is obvious to a person with ordinary skill in the art at time of the invention to relocate the pump 12 such that the housing 40 is higher than the supply manifolds 32." ECF No. 180-2 at 33, 53-54, 65-66. As discussed above, a jury could reasonably conclude that this reference to the supply manifolds included the connected atomizer plates. Thus, Dr. Joshi espoused that general theory, although his precise language indicates that perhaps it is better treated as a modification to Schmidt. Resolving this factual question in AVC's favor, a jury could reasonably find that Schmidt disclosed an upper and lower chamber.

Finally, AVC continues, Schmidt discloses how these vertically spaced chambers could be separated by a horizontal wall. ECF No. 194 at 20. AVC posits that the pump (12) may be positioned above the manifold/atomizer plate assembly, and seemingly, that the uppermost atomizer plate (34) provides the horizontal wall between the pump and lower atomizer plates. *Id.* AVC cannot rely on this contention because it is not found in the Joshi report. *Cf.* ECF No. 180-2

at 33, 54, 66. Rather, the report opines that the horizontal wall element is disclosed by Yu. *See id.* at 36, 57, 69. Given AVC's lack of admissible evidence, a reasonable jury could not find that Schmidt discloses this limitation.

### b. Differences Between Prior Art and Claims at Issue

Besides the "separated by at least a horizontal wall" limitation, the parties do not dispute for the purposes of this motion the various other differences between Schmidt and the '362 patent identified in Dr. Joshi's report. Dr. Joshi opines, for instance, that Schmidt does not disclose "an integrated liquid cooling device for a central processing unit" in claim 1, but that Yu does so. ECF No. 180-2 at 35. Similarly, Dr. Joshi states that neither Schmidt nor Yu disclose "the heat exchanging interface is removably coupled to the reservoir" limitation in claim 6, but that "Atsuo teaches such limitation." *Id.* at 46.[10] Rather than reviewing those differences in detail, the Court turns to the crux of the parties' dispute: whether AVC has provided any evidence of a motivation to modify Schmidt with the other prior art limitations contained in Dr. Joshi's report.

### c. Motivation to Combine

In order to survive summary judgment, AVC must provide evidence that, viewed through the lens of summary judgment, clearly and convincingly shows "that a person of ordinary skill in the art would have been motivated to combine the prior art in the way claimed by the ['362 patent] claims at issue and had a reasonable expectation of success in doing so." *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 991 (Fed. Cir. 2017).

The parties agree that such motivation may be found from diverse sources. *See Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013) ("[M]otivation to combine may be found explicitly or implicitly in market forces; design incentives; the 'interrelated teachings of multiple patents'; 'any need or problem known in the field of endeavor at the time of invention and addressed by the patent'; and the background knowledge, creativity, and common sense of the person of ordinary skill." (quoting *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328-29 (Fed. Cir. 2009)). Asetek contends that, even under this flexible standard, AVC's

---

[10] Chinese Patent Release No. CN2562368Y (Yu) and PCT Publication No. WO 00/16397 (Atsuo).

17

showing is defective.

First, Asetek argues that the patents concern technology of sufficient complexity that expert testimony of motivation is required. ECF No. 205 at 12. The Federal Circuit has explained that "cases involving complex technology" may require expert testimony "to establish . . . the existence (or lack thereof) of a motivation to combine references." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010). But it has declined to adopt "a per se rule that expert testimony is required to prove infringement when the art is complex." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004).

Here, AVC's rebuttal that this case concerns "no more than simple mechanical technologies," ECF No. 194 at 15, is "belied by the fact that [it] believed it necessary to introduce extensive expert testimony regarding the content of the prior art." *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1348 (Fed. Cir. 2013). Moreover, the technologies here are more complex than in the cases cited by AVC. *See Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (manual lighters); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 (Fed. Cir. 2008) (single patent claim involving retractable tarp); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004) (screw anchors and metal brackets). The technology embodied in the '362 patent's system of cooling computer components is instead comparable to other cases that have required expert testimony regarding motivation. *See, e.g.*, *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012) (devices using "a seal capable of maintaining negative pressure" and "draining fluids" to treat wounds); *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1259, 1267 (Fed. Cir. 2008) ("device used for calibrating drug delivery devices" comprised of "a housing," "a spray pump actuator," "an illumination device," and "an imaging device," each serving various mechanical functions). The Court concludes that "this subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson." *Proveris Sci. Corp.*, 536 F.3d at 1267.

Therefore, the Court focuses on the expert testimony properly tethered to Dr. Joshi's

report.[11]  As outlined above, Dr. Joshi's report at most demonstrates a general industry trend, or a "design need," for miniaturization.  *KSR*, 550 U.S. at 421.

Second, Asetek contends that, given the lack of any evidence applying this miniaturization theory of motivation to the asserted prior art references, as a matter of law AVC cannot prevail on its obviousness claim.  ECF No. 180 at 17-19.  The Federal Circuit has held that a jury cannot reasonably find the motivation to support obviousness based solely on testimony that "is generic and bears no relation to any specific combination of prior art elements," and that "fails to explain why a person of ordinary skill in the art would have combined elements from specific references in the way the claimed invention does."  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (affirming pre-verdict judgment as a matter of law).  The Court must distinguish between "knowledge of a problem and motivation to solve it" and the requisite "motivation to combine particular references to reach the particular claimed method."  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).

Here, Dr. Joshi's report contains no reference to miniaturization in his discussion of any of the prior art references or combinations.  AVC acknowledges as much.  AVC's contention that "motivation to combine prior art references need not be expressly stated" in Dr. Joshi's report misreads the case law.  AVC cites cases holding that "suggestion or motivation need not be expressly stated" in the *sources of motivation*, such as prior art references, *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996), but those cases do not relieve a party claiming obviousness of its burden to articulate and support an explanation.  *See also DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1366 (Fed. Cir. 2006) ("When not from the prior art references, the 'evidence' of motive will likely consist of an *explanation* of the well-known principle or problem-solving strategy to be applied.").

---

[11] Even if expert testimony were not required, it is the only source offered by AVC at summary judgment.  *See Innogenetics, N.V.*, 512 F.3d 1363, 1374 (Fed. Cir. 2008) (acknowledging that "an expert is not the only source for evidence that it would be obvious for one skilled in the art to combine references to reach the claimed method" but reasoning that "some kind of motivation must be shown from some source, so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method").

United States District Court
Northern District of California

Even assuming that some obviousness theories might be so straightforward as to require no more than a cursory explanation of motivation, AVC's arguments demonstrate that this is not one of them. As discussed above, Dr. Joshi's report opines that, in order to satisfy the claim limitation of vertically spaced chambers separated by at least a horizontal wall, it would be obvious to modify Schmidt to place the pump (12) outside of the reservoir (14) and above the supply manifold (32) and atomizer plates (34). *See, e.g.*, ECF No. 180-2 at 33. As an initial matter, Schmidt "provides no incentive or motivation or even commentary on why that would be desirable." *Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1342 (Fed. Cir. 2018). In fact, Schmidt states that "[e]ach liquid pump 12 is preferably disposed *in the reservoir*." ECF No. 180-20 at 3:4-5 (emphasis added). More importantly, on its face, this modification would achieve the opposite result of the miniaturization and integration goals on which AVC now relies. *See* ECF No. 194 at 16 ("[A]ll of Schmidt, Yu, Atsuo, Bo, Brost, and Uomori prior art references are directed to *integrate or combine one or more components of the liquid cooling system in order to miniaturize such system*." (emphasis added)).

Nor does Dr. Joshi explain anywhere, even in his stricken opinions, how combining the prior art references would have resulted in a workable and smaller device, let alone in the specific invention of the '362 patent. "[A] finding of obviousness at the time of invention requires a 'plausible rational[e] as to why the prior art references would have worked together.'" *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013) (quoting *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1352 (Fed. Cir. 2010)). Ultimately, "[w]ithout any explanation as to how or why the references would be combined to arrive at the claimed invention," the Court is "left with only hindsight bias that *KSR* warns against." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017).[12]

---

[12] Though not directly raised by the parties, the Court observes that Dr. Joshi's expert report is likely fatally defective for another reason as well. In *InTouch Technologies, Inc. v. VGO Communications, Inc.*, the Federal Circuit reversed the jury verdict and the district court's denial of judgment as a matter of law, holding that the expert's testimony "did not even come close" to supporting obviousness. 751 F.3d 1327, 1348 (Fed. Cir. 2014). Like here, the expert's "testimony was vague and did not articulate reasons why a person of ordinary skill in the art at the time of the invention would combine these references." *Id.* at 1351. In addition, the *InTouch* court faulted the expert for making "no effort . . . to guard against . . . hindsight bias by *appropriately considering*

Because AVC failed to present evidence from which a jury could reasonably find an essential element of its claims, the Court grants Asetek's motion for summary judgment as to the '362 patent.

### 3. Invalidity of '764 Patent Claims

Asetek also moves for summary judgment on AVC's obviousness challenge to the '764 patent. Asetek argues that (1) AVC likewise failed to present evidence of motivation to combine and (2) its prior art combinations fail as a matter of law because they would destroy the intended purpose of Schmidt. ECF No. 180 at 22-25.[13]

Regarding motivation to combine, the parties raise essentially the same arguments, and AVC offers the same evidence, as they did for the '362 patent. The Court therefore reaches the same result.

AVC again argues that expert testimony is not always required to show motivation, ECF No. 194 at 22, but the Court concluded above that the patents here are sufficiently complex as to make such testimony necessary. *See also Kinetic Concepts*, 688 F.3d at 1369.

Similarly, Dr. Joshi's report refers to a general industry trend of miniaturization, but it provides no "motivation to combine particular references to reach the particular claimed method." *Innogenetics, N.V.*, 512 F.3d at 1373. It likewise "fails to explain why a person of ordinary skill in the art would have combined elements from specific references in the way the claimed invention does." *ActiveVideo Networks*, 694 F.3d at 1328.

Accordingly, the Court grants Asetek's motion for summary judgment as to the '764 patent. The Court does not reach Asetek's alternative argument that the asserted prior art combinations destroy Schmidt's purpose.

---

*all objective evidence of nonobviousness.*" *Id.* at 1352 (emphasis added). "By failing to account for objective evidence of nonobviousness, [the expert's] analysis was incomplete, and ultimately insufficient to establish obviousness by clear and convincing evidence." *Id.* at 1352. Dr. Joshi's deposition confirms that he, too, did not evaluate any secondary considerations. ECF No. 180-7 at 34:7-12.

[13] Asetek also seeks summary judgment on claims 19-30 of the '764 patent because AVC provided no invalidity contentions as to those claims. ECF No. 180 at 22. AVC offers no opposition. The Court grants summary judgment as to those claims.

### B.       Equitable Defenses

In its answer to Asetek's counterclaims, AVC asserted that "[s]ome or all of Asetek's claims for damages and other relief are barred by the equitable doctrines of waiver, estoppel, unclean hands, acquiescence, and/or laches." ECF No. 77 ¶ 77.  Asetek seeks summary judgment on each of these affirmative defenses.  ECF No. 180 at 25.  AVC opposes the motion with respect to laches only.  ECF No. 194 at 28.  The Court therefore deems AVC's remaining defenses abandoned, *see Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009), and turns to the issue of laches.

35 U.S.C. § 286 provides that "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."  The Supreme Court has held, in turn, that "[l]aches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by § 286."  *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 967 (2017).

Here, the '362 patent and '764 patent both issued in August 2012.  *See* ECF No. 180-13 at 2; ECF No. 180-14 at 2.  Asetek argues that, because it filed its counterclaims of infringement in July 2017, *see* ECF No. 73 ¶¶ 63-73, its infringement claims are necessarily within § 286's six-year period and thus not barred by laches.  ECF No. 180 at 29.  AVC responds that there is nonetheless a disputed factual issue whether Asetek's allegations of infringement cover a period beginning in 2008.  ECF No. 194 at 28-29.  But Asetek has amended its damages start date to January 2, 2013.  *See* ECF No. 203 at 23.  Therefore, facts surrounding earlier allegations of infringement for which Asetek does not seek damages are immaterial.  *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp.*, LLC, 879 F.3d 1332, 1353 (Fed. Cir. 2018) ("Because Exmark only seeks damages for the six-year period prior to filing its complaint against Briggs, we agree with the district court that Briggs cannot assert laches as a defense.").

Accordingly, the Court grants Asetek summary judgment on laches and AVC's other abandoned equitable defenses.

# V.    AVC'S MOTION FOR SUMMARY JUDGMENT

AVC seeks summary judgment on various theories of infringement advanced by Asetek, as well as other questions regarding the scope of its liability.  ECF No. 186.

## A.    Infringement

Asetek has raised counterclaims for direct infringement, 35 U.S.C. § 271(a), indirect infringement, *id.* § 271(b), and contributory infringement, *id.* § 271(c).  *See* ECF No. 73 ¶¶ 64-66, 70-71.  Further, Asetek seeks enhanced damages for willful infringement pursuant to 35 U.S.C. § 284.  *See* ECF No. 73 ¶¶ 67, 72.

In its motion, AVC requests summary judgment as to its liability for indirect and contributory infringement, as well as the availability of enhanced damages under § 284.

### 1.    Legal Standard

Summary judgment of non-infringement requires "a two-part inquiry: first, a court construes the scope and meaning of the asserted patent claims, and then compares the construed claims to the accused product or process."  *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).  The Federal Circuit has held that "[i]nfringement is a question of fact."  *Id.*  "To support a summary judgment of non-infringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."  *Network, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).  Because the patentee bears the burden of proving infringement, an accused infringer may carry its initial burden in moving for summary judgment by "stating that the patentee ha[s] no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations."  *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).

### 2.    Patent Local Rules

As a threshold matter, the Court addresses AVC's contentions that deficiencies in Asetek's infringement contentions require summary judgment in AVC's favor.  ECF No. 186 at 12 (willful infringement), 18 (induced infringement), 21 (contributory infringement).

AVC cites no authority providing that the insufficiencies of contentions under the Patent

Local Rules are a basis for granting summary judgment. To the contrary, courts in this district have explained that where parties believe that the substance of infringement contentions are defective, the proper course is to bring a dispositive motion based on the appropriate record. *See Synopsys, Inc. v. ATopTech, Inc.*, No. 13CV02965MMCDMR, 2015 WL 5210669, at *6 (N.D. Cal. Sept. 7, 2015) ("To the extent ATopTech believes that basis [for the willful infringement contentions] is insufficient to state a claim, the proper course of action is to file a motion before the presiding judge challenging *the sufficiency of the pleadings*, not the present motion to strike the ICs." (emphasis added)); *GN Resound A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 1190651, at *7 (N.D. Cal. Mar. 21, 2013) ("Defendant has not cited any authority holding that a disclosure under Rule 3-1(h) requires a Plaintiff to disclose facts sufficient to state a cognizable claim for willful infringement. . . . To the extent Defendant believes the operative complaint fails to state a claim for willful infringement, Defendant may file the appropriate motion under the Federal Rules of Civil Procedure."). AVC does not argue that the asserted defects preclude consideration of any specific piece of evidence in the summary judgment record before the Court. Accordingly, AVC's arguments regarding the sufficiency of Asetek's infringement contentions are irrelevant.

### 3. Direct Infringement

Direct infringement occurs where one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). Because "[d]irect infringement is a strict-liability offense," the "defendant's mental state is irrelevant" to a § 271(a) claim. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015).

AVC does not seek summary judgment on direct infringement, i.e., that its products do not directly infringe the patents-in-suit. Rather, it argues that its non-infringement defenses are sufficiently strong that it is entitled to summary judgment on its liability for willful infringement. *See* ECF No. 186 at 12-14. The Court therefore addresses AVC's arguments further below.

/ / /

/ / /

### 4. Induced Infringement

#### a. Legal Standard

In addition to those who directly infringe, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C § 271(b). In other words, "[i]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). This requires not only knowledge of the existence of the patent that is infringed, but that "the defendant knew the acts were infringing." *Commil USA*, 135 S. Ct. at 1928. Therefore, a party asserting induced infringement must "prove that: (1) a third party directly infringed the asserted claims of the [relevant] patents; (2) [the defendant] induced those infringing acts; and (3) [the defendant] knew the acts it induced constituted infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. (Power Integrations II)*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

To satisfy the knowledge requirement, either actual knowledge or willful blindness is required. *Glob.-Tech Appliances*, 563 U.S. at 768. "Willful blindness is a high standard, requiring that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015) (citing *Glob.-Tech Appliances*, 563 U.S. at 769).

#### b. Discussion

First, AVC does not argue that there were no underlying acts of direct infringement by third parties. Given that AVC does not meaningfully dispute that the infringement analysis in Asetek's expert report raises triable issues as to direct infringement, *see* ECF No. 203-18, the Court concludes that a reasonable jury could find this requirement satisfied.

Second, a jury could reasonably conclude that AVC "took an affirmative act to encourage infringement." *Info-Hold, Inc.*, 783 F.3d at 1372 (citation omitted). Asetek argues that AVC took the affirmative step of "manufacturing and selling/shipping the 1.5, 2.0, K7127N and K9 products to the United States," thereby supporting induced infringement as to claims 14 and 15 of the '362 patent and claims 1-19, 21-23, 25-27, 29, and 30 of the '764 patent. ECF No. 203 at 17. In support, Asetek has produced unrebutted evidence that AVC sold and shipped its products to

25

customers within the United States. *See* ECF No. 203-7 at 3-5. This far exceeds the showing in *Power Integrations II*, where the accused infringer argued that it sold its products "overseas into a worldwide distribution system with no knowledge of where its chips will ultimately end up." 843 F.3d at 1333. Nevertheless, the Federal Circuit held there that a jury could reasonably find an affirmative step based on evidence that the infringer designed and marketed its products for the United States. *Id.* at 1333-34. Here, where it is undisputed that AVC knowingly sold and shipped products directly to the United States, a jury could even more readily find the requisite affirmative step. AVC entirely bypasses this element of Asetek's argument, focusing instead on whether the instruction manuals constitute an affirmative step inducing infringement of the '362 patent's method claims.

Turning to those claims, Asetek argues that there is evidence that "AVC has specifically designed, promoted, and sold the product[s] for [the] sole and very purpose" of practicing the methods of claims 17-19. ECF No. 203 at 17-18. Further, Asetek contends, there is a disputed issue of fact whether AVC prepared or provided input into the user manuals. *Id.* The Court need not reach the issue of AVC's role in the manuals because Asetek's first argument is sufficient for it to survive summary judgment on this point. A jury can reasonably find "an affirmative act" encouraging infringement from the infringer "incorporating components whose sole purpose is to cause the [products] to operate in a manner that infringes the [asserted] patents under normal circumstances." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008). Here, Asetek's expert report indicates that the accused products "necessarily infringe the relevant claims," *Power Integrations*, 843 F.3d at 1333, because their "only function" is "to perform [Asetek's] patented methods," *Ricoh*, 550 F.3d at 1343; ECF No. 203-18 ¶¶ 449-450. As explained in greater detail when discussing contributory infringement, there are triable issues of fact whether that is the case. Accordingly, the Court holds that a jury could reasonably find that AVC took affirmative steps to induce direct infringement.

Finally, the Court finds sufficient evidence from which a reasonable jury could conclude that AVC acted with the requisite knowledge. As an initial matter, AVC does not dispute that it "knew of the patent[s]," *Commil USA*, 135 S. Ct. at 1926, soon after they issued in August 2012.

*See* ECF No. 203-5 at 10.  Moreover, AVC has known since December 2006 of the applications that ultimately issued as the '362 and '764 patents.  *Id.*

Further, a jury could reasonably find that AVC actually knew of the infringing nature of its conduct.  AVC clearly knew of Asetek's infringement allegations as to some of its products by the time it filed its action for declaratory relief on September 30, 2014, *see* ECF No. 1, and a reasonable jury could further conclude that Asetek adequately informed AVC of the alleged infringement through its August 2, 2014 letter, *see* ECF No. 203-12 at 2.

Asetek additionally presents deposition testimony regarding a 2014 meeting in which AVC purportedly attempted to obtain a license for the two patents-in-suit.  *See* ECF No. 202-12 at 240:20-241:10.  A jury could credit this testimony of a failed attempt to license the patents, which the Federal Circuit has recognized as "evidence supporting proof of intent for inducement."  *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005); *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1379 (Fed. Cir. 2001).

Asetek also points to contemporaneous litigation before this Court concerning infringement of the '362 and '764 patents.  *See generally Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352 (Fed. Cir. 2017).  In that case, a jury rendered a December 2014 verdict that the accused products – the Cooler Master Products – infringed the two patents, and this Court denied CMI's post-trial motions on infringement in September 2015.  *Id.* at 1357-58.  Asetek submits evidence that AVC closely followed the proceedings, ECF No. 203-2 ¶ 24, and that it considered its products structurally similar to the Cooler Master Products, ECF No. 180-18 at 14-16.  A jury could reasonably treat this evidence as further confirming to AVC that its conduct would lead to infringement.

AVC does not dispute this evidence, but rather relies on its "reasonable non-infringement and invalidity defenses."  ECF No. 186 at 17.  AVC's asserted belief that the patents were invalid is irrelevant to this inquiry.  *See Commil USA*, 135 S. Ct. at 1928.  AVC's asserted good faith non-infringement belief, on the other hand, "is relevant evidence that tends to show that an accused inducer lacked the intent required to be held liable for induced infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *vacated in part on other grounds*,

135 S. Ct. 1920 (2015); *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1351 & n.2 (Fed. Cir. 2016). But relevance is not enough for a grant of summary judgment: even if the Court were to conclude that AVC's non-infringement defenses were "strong," that would at most "create a factual question as to [AVC's] own subjective beliefs," and would not defeat Asetek's claims. *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1363 (Fed. Cir. 2016).[14]

Ultimately, Asetek has adduced sufficient evidence for the jury to conclude as a factual matter that AVC actually knew of the infringing results of its actions.[15]

### 5.  Contributory Infringement

#### a.  Legal Standard

35 U.S.C. § 271(c) "incorporates the core notion that one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial non-infringing use." *Ricoh*, 550 F.3d at 1337.[16] To succeed on a contributory infringement claim, the patentee must establish: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent,

---

[14] Here, perhaps because AVC has not moved for summary judgment on the underlying question of non-infringement, the parties have not directly argued the issue in any depth. *See* ECF No. 186 at 17 (stating, without further explanation, that "AVC believes that the Accused Products do not infringe the '362 and '764 patents"). Accordingly, consideration of the reasonableness of AVC's position is largely premature and the Court reaches no firm conclusions about the merits of AVC's defenses. The Court does, however, reject Asetek's reliance on AVC's "failure to procure opinion of counsel on non-infringement." ECF No. 203 at 16 (citing *Broadcom Corp.*, 543 F.3d at 699). This argument is now barred by 35 U.S.C. § 298, which provides, in relevant part, that "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent . . . may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." *See also Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 261 (E.D.N.Y. 2016).

[15] The Court therefore does not reach the issue whether AVC was willfully blind.

[16] 35 U.S.C. § 271(c) provides in full:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

United States District Court
Northern District of California

(3) that the component has no substantial non-infringing uses, and (4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

As with induced infringement, "contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA*, 135 S. Ct. at 1926. This knowledge requirement demands "only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (emphasis in original)).

A substantial non-infringing use is one that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). In making this determination, the factfinder may "consider not only the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Once the plaintiff makes a prima facie showing that defendant's product is not suitable for substantial non-infringing use, the burden of demonstrating a non-infringing use shifts to the defendant. *Golden Blount, Inc. v. Robert H. Peterson Co. (Golden Blount II)*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).

### b.    Discussion

AVC contests only the knowledge and substantial non-infringing use elements of Asetek's contributory infringement claim.[17]

First, AVC argues that it lacks the requisite knowledge of infringement because its products were not incorporated into the Liqmax 120 product referenced in Asetek's April 30, 2014 letter. ECF No. 186 at 20. But as discussed above, Asetek has produced sufficient evidence for a jury to reasonably conclude that AVC had knowledge of infringement by August 2, 2014. *See* ECF No. 203-12 at 2. Because Asetek does not argue that its earlier letter regarding the Liqmax

---

[17] As noted above, AVC does not dispute that there is sufficient evidence from which a jury could reasonably find direct infringement by AVC's third-party customers or end users. Nor does AVC argue that the component at issue is not a material part of the invention.

120 product is the basis for AVC's knowledge, the Court need not resolve that question.

Second, AVC argues that Asetek has failed to show that the accused products have no substantial non-infringing uses. ECF No. 186 at 20-21.

In order to make its prima facie showing, Asetek points to its expert infringement report, in which Dr. Tilton opines that the accused products "are especially made and adapted for use in an infringing manner," and that AVC "designed, promoted, and sold [them] for that sole and very purpose." ECF No. 203-18 ¶¶ 449-450. Dr. Tilton further opines that the user manuals for the 2.0, K7127N, and K9 products instruct end users to install and use those products in a manner that necessarily infringes the method claims of the '362 patent. *Id.* ¶¶ 448-450; *see also* ECF Nos. 203-19, 203-20, 203-21. "Evidence that the instruction sheets taught only the infringing configuration," construed in the non-movant's favor, is sufficient to shift the burden to AVC "to introduce some evidence that end-users actually [used its products] in a non-infringing way." *Golden Blount II*, 438 F.3d at 1363-64; *see also Mentor H/S*, 244 F.3d at 1379 (explaining that, where manual stated that accused product was "specifically manufactured" for infringing purpose of ultrasonic liposuction, jury need not credit "assertions that [the product] had other potential uses because the record does not indicate any actual uses of the device other than ultrasonic liposuction").

Noting that claims 17-19 of the '362 patent teach a method for cooling "an electronic component positioned on a motherboard," ECF No. 180-13 at 20:29-30, AVC cites Dr. Tilton's report's statement that one of the advantages of the '362 patent's design is that it permits "factory-floor swap outs of cold plates tailored to different CPUs' (or GPU's) characteristics." ECF No. 203-18 ¶ 40. AVC argues that its products have a substantial non-infringing use because GPUs need not be positioned on a motherboard. ECF No. 186 at 21. Further, AVC stresses, Dr. Clarksean opined in his declaration that two Asetek liquid cooling products could be configured to cool a GPU that is not positioned on a motherboard, thus demonstrating that this use is possible. ECF No. 186-2 ¶¶ 8-11. Asetek urges the Court to strike these purportedly new expert opinions, but the Court need not decide that issue.

Even considering Dr. Clarksean's declaration, AVC cannot establish that there are no

material facts in dispute as to whether its asserted non-infringing use is substantial.  Where instruction manuals show an infringing use only, a factfinder need not credit hypothetical other uses unaccompanied by evidence of actual use.  *See Golden Blount II*, 438 F.3d at 1363-64 (substantial evidence supported district court's contributory infringement finding where infringer "introduced no evidence that anyone actually made or used the assembly in a manner contrary to the instructions so as to form a non-infringing assembly"); *Mentor H/S*, 244 F.3d at 1379.  At a minimum, factual issues as to whether this use is "substantial" preclude summary judgment.

The Court therefore denies AVC's motion for summary judgment on contributory infringement.

### 6.    Willful Infringement (Enhanced Damages)

#### a.    Legal Standard

35 U.S.C. § 284 provides that "the court may increase the damages up to three times the amount found or assessed."  The Supreme Court has observed that "[t]hat language contains no explicit limit or condition, and we have emphasized that the 'word "may" clearly connotes discretion.'"  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)).  Nonetheless, the *Halo* Court instructed that enhanced damages under § 284 "are not to be meted out in a typical infringement case," but rather "should generally be reserved for egregious cases typified by willful misconduct."  *Id.* at 1932, 1934.

Prior to *Halo*, the Federal Circuit had developed a two-part test for "willful" infringement warranting enhanced damages, which required the patentee to show by clear and convincing evidence that (1) "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) that the risk "was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc), *abrogated by Halo*, 136 S. Ct. 1923.  The *Halo* Court rejected the Federal Circuit's test as "unduly rigid."  136 S. Ct. at 1932 (citation omitted).  Among other things, the Supreme Court held that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his

infringement was objectively reckless." *Id.* at 1933. The Court further held that a preponderance of the evidence standard – rather than a clear and convincing one – must govern the enhanced damages inquiry. *Id.* at 1934.

Subsequent Federal Circuit decisions have emphasized that "[w]e do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Indeed, "under *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the entire willfulness determination is to be decided by the jury." *Exmark Mfg. Co.*, 879 F.3d at 1353. The Federal Circuit has cautioned, however, that "an award of enhanced damages does not necessarily flow from a willfulness finding." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017). Instead, "[d]iscretion remains with the court to determine whether the conduct is sufficiently egregious to warrant enhanced damages," in light of the "overall circumstances of the case." *Id.*

### b. Discussion

AVC argues that Asetek has failed to produce evidence from which a jury could reasonably find willfulness. ECF No. 186 at 13-14. The Court disagrees.

As an initial matter, AVC's heavy reliance on the reasonableness of the obviousness and non-infringement defenses presented in this litigation is misplaced, as the reasonableness of its non-infringement position does not preclude a finding of willfulness. *See Halo*, 876 F.3d at 1371.

Further, because "an infringer's subjective bad faith alone may support an award of enhanced damages," culpability is measured "by assessing the infringer's knowledge at the time of the challenged conduct." *WBIP*, 829 F.3d at 1340. A jury can reasonably find willfulness where the accused infringer "knew about the patents before they issued, conducted only a cursory analysis of the patents, . . . and unsuccessfully tried to buy the asserted patents through a third party." *Arctic Cat*, 876 F.3d at 1371.

Here, the evidence construed in the light most favorable to Asetek could reasonably lead a jury to a similar conclusion. AVC knew about the patents soon after they issued and was aware of

the initial applications beginning in December 2006. *See* ECF No. 203-5 at 10. Moreover, Asetek's evidence that AVC "unsuccessfully tried to [license] the asserted patents" further supports a finding of willfulness. *Arctic Cat*, 876 F.3d at 1371; *see also* ECF No. 203-14 at 240:20-241:10. Though the parties present dueling narratives regarding their development of prior liquid cooling products and business dealings, *see* ECF No. 203 at 11-12; ECF No. 207 at 6-8, these are factual questions. *See WBIP*, 829 F.3d at 1341. Similarly, the parties propose opposing inferences to be drawn from the re-examination proceedings before the U.S. Patent and Trademark Office. *See* ECF No. 203 at 13-14; ECF No. 207 at 10-11. To the extent they are relevant, these disputes weigh in Asetek's favor at this stage. Finally, the jury need not give weight to AVC's declaration testimony of its contemporaneous belief of non-infringement. *See Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1354 (Fed. Cir. 2018) (concluding that, in finding willful infringement, "the jury was entitled not to credit [the infringer's president's] testimony" that he "received 'a clean bill of health' from [a third-party analysis] and 'got the go' from his own 'IP attorneys'"); ECF No. 207-1 ¶ 6.[18]

In light of these material factual disputes regarding willfulness – in addition to AVC's liability for direct, induced, and contributory infringement – the Court declines to decide as a matter of law "whether the case is sufficiently egregious to warrant enhancing damages." *WBIP*, 829 F.3d at 1342. Accordingly, the Court denies AVC's motion for summary judgment on its liability for enhanced damages under 35 U.S.C. § 284.

**B. Extraterritorial Sales**

Next, AVC seeks summary judgment on the question whether it is "liable to Asetek for damages regarding AVC's sales to customers not located in the [United States]." ECF No. 186 at 11.

/ / /

_____

[18] It is unclear the extent to which AVC's willfulness argument relies on its filing of a declaratory judgment action. *See* ECF No. 186 at 14. The Court notes, however, that the Federal Circuit has clarified that when a party files an action seeking a declaration of non-infringement, for purposes of willfulness, "[t]he relevant date for determining which conduct is pre-suit is the date of the patentee's affirmative allegation of infringement, in this case the date of [Asetek's] counterclaim." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017).

### 1. Legal Standard

In general, "no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007).  But whether a sale occurs in another country rather than the United States can raise factual questions.  As the Federal Circuit has observed, "[t]he standards for determining where a sale may be said to occur do not pinpoint a single, universally applicable fact that determines the answer, and it is not even settled whether a sale can have more than one location." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015).  While the *Carnegie Mellon* court posited that "[p]laces of seeming relevance include a place of inking the legal commitment to buy and sell and a place of delivery, and perhaps also a place where other substantial activities of the sales transactions occurred," *id.* (internal quotation marks and citations omitted), it declined to "settle on a legal definition or even to say whether any sale has a unique location," *id.*  Subsequent cases confirm the fact-intensive nature of this inquiry.  For instance, in *Halo*, the Federal Circuit held on remand that "when substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a)." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016).

### 2. Discussion

Here, Asetek has presented sufficient evidence to at least raise a disputed issue of fact as to the location of AVC's sales to the identified customers that form the basis for Asetek's damages calculations.  AVC's documents characterize IBuyPower sales as U.S. sales.  *See* ECF No. 203-7 at 4-5.  Similarly, those documents list AVC's transactions with Riotoro as U.S. sales.  *See* ECF No. 202-3 at 2-4.  Finally, AVC's Rule 30(b)(6) witness testified that AVC's sales to ENERMAX Taipei were shipped directly to the United States.  ECF No. 202-5 at 149:5-20.[19]

_____

[19] In particular, AVC's witness testified:  "Based on what I know, ENERMAX requested us to ship the products to a location in the U.S.  Yes."  ECF No. 202-5 at 149:18-20.  AVC

34

In reply, AVC does not dispute any of the assertions regarding these particular customers, but rather appears to seek summary judgment on sales to unidentified customers for which AVC's sales were "outside of the U.S." ECF No. 207 at 5. The Court cannot engage in this exercise. Without actual sales to consider, the Court has no factual context with which to evaluate where the sales occurred, and therefore, no basis to grant summary judgment in AVC's favor. *Cf. Halo*, 831 F.3d at 1378; *Carnegie Mellon*, 807 F.3d at 1308-09.

Moreover, extraterritorial limits on liability do not apply in the same manner to induced infringement. "[P]urely extraterritorial conduct cannot constitute *direct* infringement of a U.S. patent, as § 271(a) includes express language limiting its scope to domestic acts.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302 (Fed. Cir. 2012) (citing 35 U.S.C. § 271(a)).[20] On the other hand, the Federal Circuit has explained, because § 271(b) "contains no such territorial proscription," liability can for induced infringement can arise "where a foreign party, with the requisite knowledge and intent, employs extraterritorial means to actively induce acts of direct infringement that occur within the United States." *Id.*; *see also Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018) (same). Because the Court has denied AVC's motion for summary judgment on induced infringement, AVC remains potentially liable for extraterritorial sales that induced direct infringement within the United States.

Accordingly, the Court denies AVC's motion for summary judgment on extraterritorial sales.

### C.    Marking Analysis

AVC further asserts that it is not liable for goods sold prior to May 15, 2017 (the date Asetek served its infringement contentions) because Asetek failed to comply with the marking

---

unsuccessfully sought to retroactively change that response to "a location in *Hong Kong*" as part of a series of 21 deposition errata, which were all stricken by Magistrate Judge Illman as impermissibly contradicting the substance of the testimony. *See* ECF No. 213.

[20] That subsection provides: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States,* or imports *into the United States* any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a) (emphasis added).

requirements of 35 U.S.C. § 287(a).  ECF No. 186 at 7, 21.

### 1.    Legal Standard

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." *Arctic Cat*, 876 F.3d at 1365.[21]  Otherwise, the patentee must give the infringer "actual notice," which requires an "affirmative communication [to the alleged infringer] of a specific charge of infringement by a specific accused product or device." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)).

Moreover, "[a] patentee's licensees must also comply with § 287, because the statute extends to 'persons making or selling any patented article for or under [the patentee].'" *Arctic Cat*, 876 F.3d at 1366 (second alteration in original) (quoting 35 U.S.C. § 287(a)).  This requirement extends to both express and implied licensees. *Amsted Indus.*, 24 F.3d at 185.  Given that "it may be difficult for a patentee to ensure his licensees' compliance with the marking provisions . . . courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the marking requirements'" in those instances. *Arctic Cat*, 876 F.3d at 1366 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)).

Compliance with § 287(a)'s marking requirements is a question of fact. *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).  "The patentee bears the burden of proving compliance by a preponderance of evidence." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

### 2.    Discussion

AVC first argues that Asetek's evidence of marking is insufficient for a reasonable jury to infer that Asetek marked "substantially all" of its products. *Nike*, 138 F.3d at 1446.

---

[21] A patentee may satisfy the marking requirement "either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." 35 U.S.C. § 287(a).

In its opposition, Asetek cites engineering and assembly drawings showing the placement on some of its products of barcode labels that include the phrase "pat. www.ip-mark.com." ECF No. 203 at 24-5 (citing ECF Nos. 186-8, 187-5, 202-8). There is also documentary evidence that this website has operated since at least January 2013. *See* ECF No. 186-9 at 2. Finally, Asetek points to its CEO's deposition testimony that Asetek consistently used this virtual marking on its products. ECF No. 203-14 at 74:7-13, 79:6-80:12.

Under Federal Circuit precedent, this is "sufficient evidence to support [a reasonable] jury's conclusion that [Asetek] consistently marked substantially all of its [products]." *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1378 (Fed. Cir. 2010). In *SEB*, the patentee's CEO testified at trial "that 'to the best of [his] knowledge' SEB's deep fryers were 'always' marked and that SEB had a policy of marking its products." *Id.* (alteration in original). In addition, SEB presented "one of its deep fryers with an unknown manufacturing date that had a sticker that listed the [patent-in-suit]." *Id.* Despite the CEO's admission on cross-examination that a batch of products did not contain the patent marking and his earlier deposition testimony that he lacked knowledge of the company's marking practices, the Federal Circuit found sufficient evidence to support the verdict. *Id.* Similarly, in *Sentry Protection Products, Inc. v. Eagle Manufacturing Co.*, the Federal Circuit concluded that the patentee had met its burden to defeat summary judgment based on "an affidavit stating that its products were marked, together with documents showing sales in that period." 400 F.3d 910, 918 (Fed. Cir. 2005).

AVC correctly states that "to satisfy the constructive notice provision, a patentee must mark, with the relevant patent number, substantially all of the patented products in a substantially consistent and continuous manner." ECF No. 186 at 24 (citing *Nike,* 138 F.3d at 1446). But AVC then goes on to suggest that because Asetek produced "at least 50 different models" and sold over "5 million liquid cooling products" overall, it must now present evidence that it marked each of those products, and not just the five units it provided in discovery. ECF No. 186 at 24 (citing ECF No. 187-14 at 65:1-8); *see also* ECF No. 208-5 at 17 (citing ECF No. 208-9 at 92:9-24). There is no authority for such a stringent burden of proof, and AVC's position is directly contradicted by

37

*SEB,* 594 F.3d at 1378.[22]

Second, AVC argues that Asetek failed to make "reasonable efforts to ensure compliance with the marking requirements" by its licensees. *Maxwell*, 86 F.3d at 1111. AVC points to two agreements between Asetek and Corsair Components, Inc. and Corsair Memory, Inc. (collectively, "Corsair"): (1) a licensing agreement in effect from August 24, 2012 to January 1, 2013, ECF No. 187-6 at 2-17; and (2) a covenant not to sue ("CNTS") that operated from January 2, 2013 until February 9, 2015, *id.* at 19-21. In its opposition, Asetek concedes that the licensing agreement at least "arguably granted Corsair [the licensee] the right to make or have made products covered by Asetek's patents without any marking requirement." ECF No. 203 at 23. Accordingly, Asetek now disclaims any right to infringement damages prior to January 2, 2013. *Id.* The Court therefore turns to the effect of the CNTS.

In the CNTS, Asetek agreed not to sue Corsair for its sale of products supplied by CoolIT. ECF No. 187-6 at 19. At the time, Asetek was pursuing infringement claims against CoolIT and affiliated entities in this district. *See Asetek Holdings, Inc. v. Coolit Systems, Inc.*, 12-cv-04498-EMC. The CNTS terminated by its own terms upon resolution of that litigation. ECF No. 187-6 at 19-20.

Though Asetek contests whether any sales protected by the CNTS were "for or under" Asetek, ECF No. 203 at 27, the Court assumes without deciding that the CNTS effectively extended a license to Corsair to sell the allegedly infringing CoolIT products. *See TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (explaining that "this court and its predecessors have on numerous occasions explained that a non-exclusive patent

_____

[22] On reply, AVC argues for the first time that the Court should impose discovery sanctions – including striking Asetek's claims for damages prior to May 15, 2017 – for "Asetek's intentional failure to provide requested samples and records" in response to AVC's request for documents "sufficient to show patent marking and/or virtual patent marking." ECF No. 208-5 at 17. The Court ordinarily disfavors new arguments on reply. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018) (citing *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006)). Regardless, AVC's cursory argument does not appear to demonstrate any violation of Asetek's discovery obligations, particularly in light of the above discussion of the evidence "sufficient to show patent marking." If Asetek later attempts to rely on additional records that AVC believes should have been produced in discovery, AVC may seek the appropriate relief at that time.

license is equivalent to a covenant not to sue").  The Court therefore applies the ""rule of reason' inquiry" to determine whether Asetek's efforts were "consistent with the purpose of the constructive notice provision – to encourage patentees to mark their products in order to provide notice to the public of the existence of the patent and to prevent innocent infringement." *Arctic Cat*, 876 F.3d at 1366 (quoting *Maxwell*, 86 F.3d at 1112).

In light of the then-active litigation regarding whether the CoolIT products infringed Asetek's patents, the Court finds that the CNTS represented "reasonable efforts to ensure compliance with the marking requirements." *Maxwell*, 86 F.3d at 1112.  At the time, it would have been unreasonable for Asetek to attempt to impose marking requirements on any CoolIT products supplied to Corsair because there was an active dispute whether those products were Asetek's "patented article[s]."  35 U.S.C. § 287(a); *cf. Arctic Cat*, 876 F.3d at 1367-69 (discussing the evidentiary burdens associated with the threshold question whether products "are unmarked 'patented articles' subject to § 287").  The CNTS was structured so that its effective license to Corsair lasted only as long as that question remained unsettled.  *See* ECF No. 187-6 at 19-20. Stated differently, the CNTS at most licensed the sale of products that Asetek could not prove it had a right to mark.  Accordingly, the Court holds that unmarked products sold under the auspices of the CNTS do not undermine Asetek's compliance with § 287(a)'s marking requirements.

Because there are genuine disputes of fact whether Asetek marked substantially all of its patented articles, the Court denies AVC's motion for summary judgment on this issue.

### D.    Remaining Issues

Finally, AVC seeks summary judgment on the priority date of the '362 patent and AVC's liability for Asetek's lost profits.  ECF No. 186 at 26-31.  In response, Asetek contends that neither issue is in dispute in this case and urges the Court not to decide them, given that those issues may arise as actual disputes in other litigation involving these patents.  ECF No. 203 at 29. AVC's reply identifies no claim in this case that would be impacted by the resolution of these issues.  *See* ECF No. 207 at 18.  In light of Asetek's concessions, the Court need not decide these questions.

## CONCLUSION

To recap, the Court GRANTS Asetek's motion to strike portions of Dr. Clarksean's expert rebuttal report and Dr. Joshi's declaration, but DENIES as moot the motion to strike Dr. Clarksean's declaration.  The Court GRANTS Asetek's partial motion for summary judgment that (1) the claims of the '362 and '764 patents are not invalid and (2) that AVC's equitable defenses to infringement fail.  Finally, the Court DENIES AVC's partial motion for summary judgment on induced infringement, contributory infringement, willful infringement, extraterritorial sales, and marking compliance.  The Court does not reach the questions of the '362 patent's priority date or Asetek's lost profits.

**IT IS SO ORDERED.**

Dated:  March 15, 2019



_____
JON S. TIGAR
United States District Judge